# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SHANE KETRON, )
                                     )
                   Plaintiff, )
                                     )     CIVIL ACTION
v. )
                                     )     No. 12-1157-JWL
CAROLYN W. COLVIN,[1] )
Acting Commissioner of Social Security, )
                                     )
                   Defendant. )
_____)

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) explanation of the weight accorded to a treating physician's opinion, the court ORDERS that the Commissioner's decision shall be REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING, this case for further proceedings consistent with this opinion.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.    Background**

Plaintiff applied for SSI on December 14, 2009, alleging disability beginning July 1, 1999.  (R. 14, 127-30).  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an ALJ.  (R. 14, 63-64, 87-89).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Michael R. Dayton on March 23, 2011.  (R. 14, 34-35).  At the hearing, counsel amended Plaintiff's alleged onset date to December 14, 2009, and testimony was taken from Plaintiff and from a vocational expert.  (R. 14, 34-62).  After the hearing, additional interrogatories were propounded to and answered by the vocational expert between June and September, 2011.  (R. 14, 262-95).

ALJ Dayton issued a decision on the case on November 21, 2011.  (R. 14-28).  In his decision, the ALJ determined that Plaintiff has severe impairments which produce a residual functional capacity (RFC) allowing only for a limited range of sedentary work.  (R. 19-20).  He determined that although Plaintiff's limitations preclude performance of his past relevant work, when considering his age, education, work experience, and RFC, jobs exist in significant numbers in the economy that Plaintiff is able to perform.  (R. 27-28).  Therefore, he determined that Plaintiff is not disabled within the meaning of the Act, and he denied Plaintiff's application.  (R. 28).

Plaintiff sought Appeals Council review of the ALJ's decision, and submitted a Representative Brief explaining the bases for his disagreement with the decision.  (R. 7-10).  The Council made the Representative Brief a part of the administrative record in this

case, and considered it in deciding whether to grant review. (R. 1, 5). Nonetheless, the Council determined that the Brief did not provide a basis for changing the ALJ's decision, found no reason under the rules of the Social Security Administration to review the decision, and denied Plaintiff's request for review. (R. 1-2). Therefore, the ALJ's decision became the final decision of the Commissioner; (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006); and Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act. Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)). Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the plaintiff was a party. It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v.

3

Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).

When deciding if substantial evidence supports the ALJ's decision, the mere fact that there is evidence in the record which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and noting that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Moreover, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is disabled only if he can establish that he has a physical or mental impairment which prevents him from engaging in <u>any</u> substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. <u>Knipe v. Heckler</u>, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); <u>accord</u>, <u>Lax</u>, 489 F.3d at 1084. The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 416.920 (2011);[2] <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).

---

[2]Because the Commissioner's decision was issued on November 21, 2011, all citations to the Code of Federal Regulations in this opinion refer to the 2011 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2011, unless otherwise indicated.

Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff makes two claims of error in the decision, both dealing with the ALJ's handling of the medical source opinions of Plaintiff's treating physician, Dr. Fast.  First, he claims the ALJ erred in purporting to accord "controlling weight" to Dr. Fast's opinion regarding Plaintiff's physical limitations, while at the same time and without explanation assessing a physical RFC which is materially different and less restrictive than the limitations contained in Dr. Fast's opinion.  Then, he claims the ALJ erred in according "minimal weight" to Dr. Fast's opinion regarding Plaintiff's mental limitations merely because Dr. Fast is not a mental health professional.  The Commissioner argues that the

6

ALJ did not err. She argues that the administrative record supports the ALJ's RFC assessment, that the ALJ provided an extensive, detailed summary of all the evidence, and that the decision explains each RFC conclusion by reference to record evidence, thus satisfying the requirements of Social Security Ruling (SSR) 96-8p. Finally, she argues that the ALJ discounted Dr. Fast's opinion regarding Plaintiff's mental limitations based upon several specific reasons supported by the record evidence <u>in addition to</u> the fact that Dr. Fast is not a specialist in mental health.

The court agrees with the Commissioner that the ALJ discounted Dr. Fast's opinion regarding mental limitations for at least three specific reasons in addition to the fact that Dr. Fast is not a mental health specialist. (R. 25) (Dr. Fast prescribed medication for Plaintiff's mental condition based only on Plaintiff's report of symptoms, Dr. Wilkinson's opinion was more consistent with the record as a whole, Dr. Fast's opinion is not consistent with his own treatment notes). Nonetheless, the court need not address whether the reasons relied upon are sufficient to support the ALJ's determination in that regard because even if there is no error in the ALJ's consideration of that issue, the court finds that remand is necessary because the ALJ erred in evaluating Dr. Fast's opinion regarding physical limitations, and that error is not harmless.

III. **Evaluation of Dr. Fast's Opinion Regarding Physical Limitations**

    A. <u>**Background, Record Evidence, and the ALJ's Decision**</u>

At the hearing, counsel for Plaintiff informed the ALJ that Plaintiff had requested a medical source statement from Dr. Fast, that Dr. Fast had referred Plaintiff for a

7

functional capacity evaluation (FCE), and that they were waiting for the FCE report. (R. 37-38). Counsel asked the ALJ to leave the record open after the hearing for the report to come in. (R. 38). After the hearing, counsel submitted to the ALJ another treatment record from Dr. Fast, Dr. Fast's physical medical source statement,[3] Dr. Fast's mental medical source opinion, and the FCE report discussed at the hearing. (R. 658-712).

After receiving these documents, the ALJ provided a set of interrogatories to the vocational expert (VE). (R. 262-66). In response, the VE explained that if Plaintiff had the physical limitations presented in Dr. Fast's physical medical source statement, and assuming that the stated need to lie down or recline can be accommodated during normal breaks such as lunch break, there would be no reduction in the sedentary occupational base available to Plaintiff, but that the light occupational base and above would be eliminated. (R. 269-70).

After the VE answered the ALJ's interrogatories, the ALJ provided the responses to Plaintiff and allowed Plaintiff to pose additional interrogatories. (R. 277-79). Among other questions, Plaintiff asked the VE how he had taken into consideration Dr. Fast's limitations to only occasional reaching and handling, and how it would affect his answers if Plaintiff's need to lie down or recline could not be accommodated by normal break periods. (R. 279). The VE responded, "Actually I missed the occasional reaching and

---

[3]Hereinafter in this opinion, the court uses the terms used by the ALJ in his decision to describe Dr. Fast's opinions--"mental medical source opinion," and "physical medical source statement." (R. 25).

handling [limitations.] With these being considered it would change my answers" to the prior interrogatories. (R. 281). He explained that those limitations would require a "95% +" reduction in the sedentary occupational base and all other job bases would be eliminated. Id. He went on to explain that he could identify only one job left for a person with such limitations; the job of a call-out operator, and that 250 such positions would be available in the Wichita region, 500 in the state of Kansas, and 55,000 in the nation. Id. He explained that if the need to lie down or recline could not be accommodated by normal break periods "it would eliminate all work." Id.

    Thereafter, the ALJ provided another set of interrogatories to the VE in which he asked the VE to assume an individual with the RFC which was eventually assessed in this case: an individual who can lift 15 pounds occasionally and 5 pounds frequently. He can stand and walk 2 hours in an 8-hour workday, for a maximum of 30 minutes at one time and is able to sit 8 hours in an 8-hour workday with normal breaks. He retains the ability to push and pull 15 pounds occasionally, 8 pounds frequently, and 3 pounds constantly. That individual can occasionally climb stairs, ladders, and ramps, but never ropes. He can occasionally stoop, kneel, crouch, crawl, and frequently balance. He can occasionally reach above his shoulders, frequently reach in other directions, frequently grasp (gross manipulation), finger (fine manipulation), and feel. The individual has no limitations with vision or hearing. He should avoid concentrated exposure to weather and wetness/humidity. In addition, the individual should avoid even moderate exposure to extreme cold or heat, dusts and fumes, vibrations, hazards, and heights. (R. 289).

9

Considering this RFC, the ALJ responded that only 10% of the sedentary occupational base but everything above the sedentary base would be eliminated. (R. 290). He also opined that there would be three jobs available in the economy to such an individual, jobs as a semi-conductor bonder, a touch-up screener, or a document preparer. Id.

In his decision, the ALJ recognized and discussed that Plaintiff was treated by Dr. Fast from December 2008 through November 2010, and that Dr. Fast had prepared medical opinions regarding Plaintiff's physical limitations and Plaintiff's mental limitations. (R. 21-26) (passim). The ALJ accorded Dr. Fast's opinion regarding Plaintiff's mental limitations "minimal weight" because Dr. Fast is not a mental health professional, because Dr. Fast prescribed medication for Plaintiff's mental condition based only on Plaintiff's report of symptoms, because Dr. Wilkinson's opinion was more consistent with the record as a whole than was Dr. Fast's, and because Dr. Fast's opinion regarding mental limitations is not consistent with his own treatment notes. (R. 25).

With regard to Dr. Fast's "physical medical source statement, dated March 16, 2011," on the other hand, the ALJ "found it is well-supported and consistent with the other substantial evidence in the case record." Id. The ALJ recognized Dr. Fast's opinion that Plaintiff "would need to lie down or recline to alleviate pain symptoms every four hours," and he found that limitation "can be accommodated within a normal workday and imposes no additional functional limitations." Id. Consequently, he accorded Dr. Fast's opinion regarding physical limitations "controlling weight." (R. 26) (citing 20 C.F.R. 416.927 and SSR 96-2p). As relevant to the issues presented in this opinion, Dr. Fast's

10

physical medical source statement limits Plaintiff to only occasional reaching and handling (R. 664), whereas the RFC assessed by the ALJ limits Plaintiff to occasionally reach above his shoulders, frequently reach in other directions, and frequently grasp, finger, and feel. (R. 19).

### B.  The Parties' Arguments

Plaintiff first cast his argument regarding the error alleged as a failure by the ALJ to provide the narrative discussion of Plaintiff's RFC which is required by SSR 96-8p. But, he explained that in his view, "[t]he reason for a lack of narrative here is that the ALJ purported to give Dr. Fast's MSS-P [(Medical Source Statement - Physical)] controlling weight, but then inconsistently included differing limitations in the RFC." (Pl. Br. 17). He argues that the ALJ properly accorded controlling weight to Dr. Fast's opinion but that in the RFC assessed the ALJ deviated from the limitations opined by Dr. Fast. Id. He points out that Dr. Fast opined that Plaintiff is limited to only occasional reaching and handling, but that the ALJ determined that Plaintiff can only occasionally reach above his shoulders, but can frequently reach in other directions. Id. at 18. He argues that these facts clearly present a discrepancy between Dr. Fast's opinion and the RFC assessed by the ALJ, but that the ALJ did not explain how he resolved this discrepancy despite purporting to accord "controlling weight" to Dr. Fast's opinion. (Pl. Br. 18). He argues that Dr. Fast's limitation is more restrictive than the limitations assessed by the ALJ and that the difference is not harmless because the VE opined than only one job was available

11

to an individual with the limitations assessed by Dr. Fast, and the ALJ did not consider whether that job is available in significant numbers in the economy.  Id. at 19.

The Commissioner begins her argument with the assertion that "Plaintiff appears to suggest that, because the ALJ gave [Dr. Fast's] opinion controlling weight, the ALJ was required to incorporate all of Dr. Fast's conclusions into the RFC."  (Comm'r Br. 4). She then proceeds to point to record evidence other than Dr. Fast's opinion which in her view tends to support the ALJ's findings with regard to reaching, handling, and manipulation, and concludes her argument by asserting that "the ALJ's decision explains each [RFC] conclusion by reference to evidence in the record," and thereby "satisfies SSR 96-8p."  Id. at 4-6.

### C.     Analysis

The court finds itself flabbergasted by the Commissioner's argument.  Although she provides no authority for the proposition, she implies that an ALJ may accord <u>controlling</u> weight to a treating physician's opinion, yet somehow exclude certain portions of that opinion from having controlling effect without any comment or explanation of the basis for doing so.  This flies in the face of the plain meaning of the term "controlling weight."  The definition of "control" is "[t]o exercise authoritative or dominating influence over; direct."  The American Heritage College Dictionary 311 (4th ed. 2002).  Therefore, on its face an opinion which is accorded controlling weight will have authoritative or dominating influence over the subject of the opinion.  When the ALJ accorded controlling weight to Dr. Fast's opinion without excepting any portion of that

opinion or without explaining that a portion of that weight was reserved or excepted, he was saying that Dr. Fast's opinion was authoritative as to any matter included in the opinion. Consequently, according controlling weight to Dr. Fast's opinion implied that the opinion that Plaintiff can only occasionally reach or handle was authoritative or dominating over any other opinion in deciding Plaintiff's limitations. Nevertheless, the ALJ determined that Plaintiff can frequently reach elsewhere than above his shoulders and can frequently grasp, finger, and feel. And, he gave no explanation for doing so.

Moreover, the court's view of "controlling weight" is confirmed by the Commissioner's interpretation in SSR 96-2p, <u>Giving Controlling Weight to Treating Source Medical Opinions</u>, July 2, 1996. West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2013). SSR 96-2p defines "controlling weight" as "the term used in 20 C.F.R. 404.1527(d)(2) and 416.927(d)(2) to describe the weight we give to a medical opinion from a treating source <u>that must be adopted</u>." <u>Id.</u> at 112 (emphasis added). The Ruling requires that when four conditions are present, "[t]he rule on controlling weight applies." <u>Id.</u> Those conditions are (1) the opinion must come from a "treating source;" (2) the opinion must be a "medical opinion;" (3) the adjudicator must find the opinion well supported; and (4) the opinion must be consistent with the other substantial evidence in the case record. <u>Id.</u> In this case, the ALJ found all four of the conditions met, and accorded controlling weight to Dr. Fast's physical medical source statement. (R. 25-26). Therefore, it "must be adopted." SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 112 (Supp. 2013). Nonetheless, the ALJ adopted at least a reaching limitation which was

13

less restrictive than that opined by Dr. Fast, and provided no explanation for that difference in the decision. In fact, he didn't even acknowledge that Dr. Fast's reaching limitations were different than those he assessed. This, despite the proceedings described above in which the interrogatories to the VE revealed the effect of Dr. Fast's reaching and handling limitations, and in which the ALJ's final set of interrogatories contained materially different limitations that were eventually included in the RFC. This is error.

Further support for the court's view is evident in the distinction made by the ALJ in his consideration of Dr. Fast's mental medical source opinion and Dr. Fast's physical medical source statement. The ALJ specifically stated that Dr. Fast's mental medical source opinion "is not entitled to controlling weight," accorded that opinion "minimal weight," and stated his reasons for doing so. (R. 25). Conversely, he stated that he found Dr. Fast's physical medical source statement worthy of controlling weight, noted that the opinion met the requirements of SSR 96-2p, and specifically stated that he gave it controlling weight. Id. at 25-26. The ALJ is apparently aware of the meaning of "controlling weight" as discussed above and as presented in SSR 96-2p, and made clear that Dr. Fast's mental medical source opinion was not accorded "controlling weight." But he did not distinguish Dr. Fast's reaching and handling limitations as he did the mental medical source opinion. The court does not intend to imply that the ALJ could never have excepted Dr. Fast's reaching and handling limitations from "controlling weight." It is sufficient to note that he did not do so.

The ALJ's error in failing to give effect to Dr. Fast's reaching and handling limitations is not harmless. As discussed above, the VE testified that he could identify only one job left for a person with the reaching and handling limitations contained in Dr. Fast's physical medical source statement--the job of a call-out operator. (R. 281). However, the ALJ did not find that call-out operator was a job that is available for a person such as Plaintiff in the facts and circumstances of this case. Further (and likely because he did not identify call-out operator as a job available to Plaintiff), the ALJ did not consider whether that job exists in "significant numbers" in the economy. But, the determination whether a job exists in "significant" numbers in the economy is for the Commissioner to make in the first instance, based upon the individual merits of the case. Trimiar v. Sullivan, 966 F.2d 1326, 1329-32 (10th Cir. 1992).

Remand is necessary for the Commissioner properly to evaluate Dr. Fast's opinion, to accord it weight accordingly, and to explain her rationale for doing so. If Dr. Fast's physical medical source statement is accorded controlling weight, it will be necessary for the Commissioner to further determine whether the job of call-out operator exists in significant numbers in the economy.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING, this case for further proceedings consistent with this opinion.

Dated this 16th day of September 2013, at Kansas City, Kansas.

                                                s:/ John W. Lungstrum
                                                **John W. Lungstrum**
                                                **United States District Judge**